UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL PAUL WALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:21-CV-1153 HEA |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, [Doc. No. 5]. Plaintiff opposes the Motion. For the reasons set forth below, the Motion is granted.

### Background

Plaintiff brought this action under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680. Plaintiff's Complaint alleges the following:

On the afternoon of January 31, 2019, Plaintiff went to the United States Postal Service office (the "post office") located at 18072 Manchester Rd, Wildwood, Missouri, 63038 to retrieve his mail.

The United States Postal Service is an agency of Defendant that occupies the premises of the post office. Defendant's employees at the post office are responsible for possession and control of the premises.

On January 31, 2019, the parking lot at the post office was covered in ice. The parking lot had been covered in ice since at least early in the morning. The ice on the parking lot was a dangerous condition. Defendant's employees witnessed the parking lot covered in ice hours before Plaintiff was injured. Defendant's employees possessed, and/or controlled the post office, including the parking lot where Plaintiff was injured. Defendant's employees as possessors of land, had responsibilities to:

i. Remove dangerous conditions on the parking lot;

ii. Warn of dangerous conditions on the parking lot; and

iii. Ensure the parking lot was reasonably safe for invitees;

Defendant's employees failed to remove the ice on the parking lot. Defendant's employees failed to warn of the ice on the parking lot. Defendant's employees failed to ensure the parking lot was reasonably safe for invitees.

Upon leaving the post office, Plaintiff slipped and fell on the ice. Plaintiff suffered injuries when he fell.

Defendant moves to dismiss for lack of subject matter jurisdiction, arguing Defendant has not waived sovereign immunity.

## Discussion

**Subject Matter Jurisdiction**

Subject matter jurisdiction refers to a court's power to decide a certain class of cases. *LeMay v. U.S. Postal Serv.*, 450 F.3d 797, 799 (8th Cir. 2006). "Federal courts are not courts of general jurisdiction; they have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). *See also Gunn v. Minton*, 568 U.S. 251, 256 (2013) ("Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute"). The presence of subject matter jurisdiction is a threshold requirement that must be assured in every federal case. *Kronholm v. Fed. Deposit Ins. Corp.*, 915 F.2d 1171, 1174 (8th Cir. 1990). *See also Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) ("The threshold requirement in every federal case is jurisdiction and we have admonished the district court to be attentive to a satisfaction of jurisdictional requirements in all cases"). As such, the issue of subject matter jurisdiction may be raised at any time, by any party or the court. *Gray v. City of Valley Park, Mo.*, 567 F.3d 976, 982 (8th Cir. 2009).

Federal courts have subject matter jurisdiction over both federal question cases and diversity of citizenship cases. *See Auto-Owners Ins. Co. v. Tribal Court of Spirit Lake Indian Reservation*, 495 F.3d 1017, 1020 (8th Cir. 2007) (finding that subject matter jurisdiction is lacking if neither diversity of citizenship nor federal question jurisdiction applies); *McLaurin v. Prater*, 30 F.3d 982, 984-85

(8th Cir. 1994) (noting that Congress has directed that district courts shall have jurisdiction in both federal question and diversity cases). The burden of proving subject matter jurisdiction belongs to the plaintiff. *V S Ltd. P'ship v. Dep't of Hous. & Urban Dev.*, 235 F.3d 1109, 1112 (8th Cir. 2000).

In this case, plaintiff has asserted that the Court has federal question jurisdiction. Federal question jurisdiction gives district courts "original jurisdiction over civil actions arising under the Constitution, laws, or treaties of the United States." *Griffioen v. Cedar Rapids & Iowa City Ry. Co.*, 785 F.3d 1182, 1188 (8th Cir. 2015). *See also* 28 U.S.C. § 1331. Whether a claim arises under federal law is determined by reference to the "well-pleaded complaint." *Great Lakes Gas Transmission Ltd. P'ship v. Essar Steel Minn. LLC*, 843 F.3d 325, 329 (8th Cir. 2016). The well-pleaded complaint rule provides that jurisdiction exists only when a federal question is presented on the face of a plaintiff's properly pleaded complaint. *Markham v. Wertin*, 861 F.3d 748, 754 (8th Cir. 2017). *See also Thomas v. United Steelworkers Local 1938*, 743 F.3d 1134, 1139 (8th Cir. 2014) ("Under the well-pleaded complaint rule, a federal question must exist on the face of the plaintiff's properly pleaded complaint in order to establish federal question subject matter jurisdiction").

Plaintiff's complaint must establish "either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on the resolution

of a substantial question of federal law." *Williams v. Ragnone*, 147 F.3d 700, 702 (8th Cir. 1998). *See also Northwest South Dakota Production Credit Ass'n v. Smith*, 784 F.2d 323, 325 (8th Cir. 1986) (stating that "[a] non-frivolous claim of a right or remedy under a federal statute is sufficient to invoke federal question jurisdiction"). "If the asserted basis of federal jurisdiction is patently meritless, then dismissal for lack of jurisdiction is appropriate." *Biscanin v. Merrill Lynch & Co., Inc.*, 407 F.3d 905, 907 (8th Cir. 2005).

Plaintiff is attempting to bring a claim against the USPS under the Federal Tort Claims Act (FTCA). In a FTCA claim against the USPS, the proper party defendant is actually the United States. *See* 28 U.S.C. § 2679(a). *See also Pruitt v. U.S. Postal Service*, 817 F. Supp. 807, 808 (E.D. Mo. 1993) (noting that in a tort claim against the USPS, the United States was the proper defendant). Generally, "sovereign immunity prevents the United States from being sued without its consent." *Iverson v. United States*, 973 F.3d 843, 846 (8th Cir. 2020). *See also Hinsley v. Standing Rock Child Protective Services*, 516 F.3d 668, 671 (8th Cir. 2008) (stating that "[i]t is well settled that the United States may not be sued without its consent"). "Sovereign immunity is jurisdictional in nature." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). That is, "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983).

Thus, in order to sue the United States, a plaintiff must show a waiver of sovereign immunity. *See V S Ltd. Partnership*, 235 F.3d at 1112.

"Because the Postal Service is an independent establishment of the executive branch of the Government of the United States, with significant governmental powers, it enjoys federal sovereign immunity absent a waiver." *Najbar v. United States*, 649 F.3d 868, 870 (8th Cir. 2011). Such a waiver is provided by the FTCA, "which applies to tort claims arising out of activities of the Postal Service." *Id.* The FTCA "waives federal sovereign immunity for injuries caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable." *Newcombe v. United States*, 933 F.3d 915, 917 (8th Cir. 2019). In other words, the FTCA acts as a limited waiver of sovereign immunity, which opens the door to state-law liability claims against the federal government for harm caused by a governmental employee. *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019).

Plaintiff alleges a claim under the FTCA.  He alleges the government is liable for injuries he sustained on the post office premises because it breached its "duty of reasonable care" by failing to: (a) remove the ice; (b) warn invitees about the ice; (c) fail to report the ice to supervisors; (d) order ice removal service; (e)

select competent contractors to remove the ice; and (f) supervise the contractors.

Alternatively, he seeks recovery under the doctrine of premises liability.

Plaintiff, however, cannot show a waiver of sovereign immunity because

under Missouri law, a private individual would not be liable under the

circumstances giving rise to Plaintiff's injuries.  The Eighth Circuit Court of

Appeals has very recently affirmed that Missouri's application of the

"Massachusetts Rule" precludes recovery for accumulation of ice on its premises.

> To prevail on their negligence claim under Missouri law, [plaintiffs] must prove that (1) [defendant] owed them a duty of care, (2) [defendant] breached that duty, and (3) [plaintiffs] suffered an injury proximately caused by [defendant's] breach. *Pippin v. Hill-Rom Co.*, 615 F.3d 886, 889 (8th Cir. 2010) (citing *Lopez v. Three Rivers Elec. Coop.*, 26 S.W.3d 151, 155 (Mo. 2000) (en banc)).

> Here the district court granted [defendant's] motion for summary judgment when it found that [defendant] owed [plaintiffs] no duty of care. "The existence of a duty is a question of law for the court based on the court's determination whether the facts pleaded or proven show 'the existence of a relationship between the plaintiff and defendant that the law recognizes as the basis of a duty of care.' " *O'Donnell v. PNK (River City), LLC*, 619 S.W.3d 162, 167 (Mo. Ct. App. 2021) (quoting *Bunker v. Association of Missouri Elec. Cooperatives*, 839 S.W.2d 608, 611 (Mo. Ct. App. 1992)). A Missouri premises owner may be found liable to an invitee who is injured as a result of the owner's failure to use ordinary care in removing or warning of a dangerous condition, but Missouri recognizes an exception to that general rule known as the "Massachusetts Rule." *Id.*

> Under the Massachusetts Rule, an owner has "no duty to remove snow or ice that accumulates naturally and is a condition general to the community." *Id.* (citing *Richey v. DP Props., LP*, 252 S.W.3d 249, 251–52 (Mo. Ct. App. 2008); *Willis v. Springfield Gen. Osteopathic Hosp.*, 804 S.W.2d 416, 419 (Mo. Ct. App. 1991)). Missouri courts adopted this rule, reasoning that "where the condition is one general to the community it creates a natural

hazard to everyone who ventures out," and "any effort of the landlord would in fact only diminish the natural hazard to a very negligible degree." *Willis*, 804 S.W.2d at 419 (quoting *Woodley v. Bush*, 272 S.W.2d 833, 835 (Mo. Ct. App. 1954)). However, Missouri courts recognize exceptions to the Massachusetts Rule, finding that a duty of care exists "in cases where the property owner voluntarily assumed the duty to remove snow or ice either by agreement or through a course of conduct over a period of time." *O'Donnell*, 619 S.W.3d at 167.

Based on our review of the record, we find that the district court properly applied the Massachusetts Rule and granted [defendant's] motion for summary judgment. There is no dispute that the patch of ice on which [plaintiff] slipped and fell had accumulated naturally on the walkway outside the casino's entrance. There was no dispute that the accumulation was attributable to weather conditions general to the community. [Plaintiffs] point to no evidence, for example, that the ice on the walkway was an isolated condition unique to [defendant's] property, rather than the result of weather affecting the entire Kansas City area. *See Alexander*, 786 S.W.2d at 601 ("Whether the snow and ice condition existing on a parking lot was a condition general to a geographical area or an isolated condition has been a fact question for jury determination in some cases." (citing *Turcol v. Shoney's Enterprises, Inc.*, 640 S.W.2d 503, 508 (Mo. Ct. App. 1982))). Applying the Massachusetts Rule to these circumstances, [defendant] owed no legal duty to remove or treat the ice. *O'Donnell*, 619 S.W.3d at 164; *Medlock v. St. John's Health Sys., Inc.*, 426 S.W.3d 35, 37 (Mo. Ct. App. 2014); *Richey,* 252 S.W.3d at 250.

*Cleek v. Ameristar Casino Kansas City, LLC*, 47 F.4th 629 (8th Cir. 2022).

The affidavits and deposition testimony in this case establishes that the postmaster, Jasen Culver, parked at the end of the parking lot because he entered the facility through the backdoor. He travels the length of the parking lot when he enters it.  Culver testified that the parking lot "seemed a little bit wet" when he arrived at 7 a.m. on January 31, 2019.  He returned to the parking lot around 8 a.m. to conduct vehicle inspections with the carriers, and again at 10:30 a.m., when he

observed that the parking lot was wet. He also observed that the pretreatment the contractor applied was no longer present.

Additionally, at 11:30 a.m., Culver left for lunch and observed "that the parking lot and sidewalk had started to dry." He returned from lunch between 12:10 and 12:30.  He "observed that the parking lot and sidewalk were dry. [He] observed no water, ice, snow, or pretreatment on either the parking lot or sidewalk." Culver's observations occurred after he inspected the area when he first drove in after lunch. He examined the parking lot as he drove through it to his parking space. This allowed him to see the entire parking lot entering it. After parking his vehicle, he walked back across the parking lot to the facility's rear entrance.  As he crossed the parking lot, he looked right. This gave him a second full view of the parking lot. During the inspection, Culver looked down the parking lot and the sidewalk.  He looked down the sidewalk "just to make sure that there's nothing there that . . . shouldn't be there."

On January 31, 2019, Culver had an "[a]bsolute full view of a pretty much empty parking lot other than some of [his] employees' cars that [were] parked in the far back left of the parking lot." Based on his post-lunch parking lot examination, Culver determined that the parking lot was dry. "I inspected the parking lot when I drove in from lunch. It was completely dry at that time." Furthermore, he determined that it was unnecessary to conduct an additional

inspection after he determined the parking lot was dry. "So, and there was no precipitation for the day, so I wasn't required to go back out and check again."

"The [U.S. Postmaster] handbook states that I, during inclement weather, that I am to make periodic checks as needed. And since the parking lot was dry when I came back at 12:30 and there was not additional precipitation, I did not think it necessary to go back outside."  Finally, he received "no reports from patrons or anyone else that there were slick spots on the parking lot or sidewalk or that other patrons had slipped on the parking lot or sidewalk."

Plaintiff left his residence on January 31, 2019, on Hardt Road at about 2:00 p.m. It was "[s]till very cold and blustery." He recalls that "[w]e had had a snow recently, earlier. I don't recall which day. So it had been cold enough that the snow had not completely dissipated, so I'm sure that there was some snow around . . . ."

Plaintiff's route from his home on Hardt Road to the post office is approximately two miles. It required him to drive on Hardt Road. Plaintiff does not know if Hardt Road was plowed before January 31, 2019. He does not recall whether there was snow on Hardt Road. According to Culver, Hardt Road is never plowed, and snow accumulates on it.

Plaintiff did not arrive at the post office between 7 a.m. and 11:30 a.m. when Culver observed water. He arrived at the post office about 2:30 p.m. He was attentive to the presence of ice or snow on the parking lot. The parking lot

10

appeared dry to him. For example, he observed no "standing liquid water." He also observed no snow or ice on the parking lot.  The parking lot appeared dry.

Plaintiff pulled his vehicle straight into the parking space. Culver remembers that Plaintiff left his vehicle running. When Plaintiff left his vehicle, he was attentive to ice and snow on the parking lot given the weather conditions. It was cold, single digits. He did not observe any snow, ice or water on the parking lot as he exited his vehicle. Plaintiff walked around the front of his vehicle, and into the post office's front entrance. He was attentive to the path on which he walked.  He observed no ice on the sidewalk. Furthermore, he does not recall seeing any ice on the parking lot as he passed in front of his vehicle, including the passenger's side. He was in the post office approximately 5 minutes. Plaintiff returned to his vehicle the same way he entered the post office. He observed no ice between the time he left the post office and his fall.  He was attentive while he walked from the post office to his vehicle.

Plaintiff did not see the patch of "black ice" either going into or coming out of the post office. According to Plaintiff the "black ice" was an irregular pattern, approximately 3 to 5 feet. It was approximately five feet from his car. Plaintiff concedes that he has no evidence that the USPS had actual knowledge of the ice. Furthermore, he cannot say how they should have seen it.

Pursuant to *Cleek*, the Massachusetts Rule applies, and Missouri law would not hold a private citizen liable under the circumstances surrounding Plaintiff's alleged injury.  Accordingly, Plaintiff cannot establish a waiver of sovereign immunity as to his claim.

## Conclusion

Subject matter jurisdiction is a threshold requirement in every federal case. As such, the issue of jurisdiction can be raised at any time, by any party or the Court. Plaintiff has the burden of proving the existence of subject matter jurisdiction, which he has not done.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, [Doc. No. 5] is **granted**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). A separate order of dismissal will be entered herewith.

Dated this 20th day of September,  2022.


_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE